DECISION
Sterry Street Towing, Inc. ("appellant") appeals a decision of the Division of Public Utilities and Motor Carriers of the State of Rhode Island ("Division") ordering it to reimburse the complainant for an overcharge on a tow and fining it $1,000.00 for what the Division considered unconscionable behavior. This Court has jurisdiction pursuant to R.I.G.L. 1956 § 39-3-6. After reviewing the entire record and considering the arguments, this Court affirms the decision of the Division and dismisses the appellant's appeal.
 Facts and Travel
On October 3, 2001, the Pawtucket, Rhode Island, Police Department directed the appellant to recover a 1988 Jaguar XJ6 from Parent's Marina in Pawtucket. The car, which had been reported stolen, was submerged in the water off the Marina's pier. The appellant recovered the vehicle from the water and subsequently contacted the owner on October 5, 2001. The owner's insurer, Geico Direct Insurance ("Geico"), arrived at the appellant's location to retrieve the vehicle and was presented with a towing bill for $1,498.50, which was itemized as such:
 1-HD 50 Ton HYD, Crane Truck — 2.5 hours at $300.00 per hour = $750.00 1-Flat Bed — 1.5 hours at $60.00 per hour = $90.00 1-Extra Man — 2.5 hours at $45.00 per hour = $112.50 200 foot 7.5 inch cable must be replaced — (salt water damage) — 200 feet at $1.60 per foot = $320 Labor to remove and replace cable on crane — 2.5 hours at $65.00 per hour = $162.50 Tow to shop = $63.50
On November 6, 2001, a representative of Geico filed a complaint with the Division against the appellant, alleging that the appellant had improperly charged it for the replacement of a cable in connection with the tow. On May 24, 2002, the Division held a hearing on the matter and issued a decision adverse to the appellant on August 14, 2002 ("Order").
The Hearing Officer found that the appellant charged $63.50 for the tow even though its applicable tariff rate was only $63.00. The Hearing Officer found that the 1988 Jaguar XJ6's gross vehicle weight (GVW) was less than 8,000 pounds. The Hearing Officer found that the tariff approved by the Division for vehicles with a GVW of less than 8,000 pounds does not permit the assessment of charges other than the base tow rate ($63.00), any applicable after hours release rate, and any applicable recovery rate. Applying that tariff, the Hearing Officer determined that the appellant could only charge $153.00 for the tow ($63.00 for the tow and $90.00 for the one and one-half hours spent recovering the Jaguar XJ6 after the first hour)[1] and $24.00 a day for storage for sixteen days ($384.00). As a result of its findings, the Division ordered the appellant to reimburse Geico $1,345.50 for overcharges and fined it $1,000.00 for charging Geico an amount well in excess of its allowable tariff.
On August 22, 2002, the appellant submitted a Motion for Reconsideration to the Division. On September 11, 2002, the Division issued a report and order upholding its original Order. The appellant then requested and received a stay of the penalty that had been assessed pending its appeal to this Court. On October 21, 2002, the appellant appealed the Division's Order to this Court.
 Jurisdiction and Review
The plaintiffs filed a timely appeal to the Court pursuant to G.L. 1956 § 42-35-15(b). Regarding the scope of review, G.L. 1956 §42-35-15(g) states that:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion
Thus, the Court's review is not de novo, but rather limited to the strictures of the General Laws. Munroe v. Town of East Greenwich,733 A.2d 703, 705 (R.I. 1999). "The Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id. "Rather `its review is confined to a search of the record to ascertain whether the [agency's] decision rests upon `competent evidence' or is affected by an error of law.'" Id. (quoting Kirby v. Planning Boardof Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)). "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Arnold v. Rhode Island Dep'tof Labor and Training Bd. Of Rev., No. 2001-237-M.P. (AA 00-82), R.I. Supreme Ct., slip op. at 3, 2003 R.I. LEXIS 71* (March 26, 2003) (quotingCenter for Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998)).
"When more than one inference may be drawn from the record evidence, the Superior Court is precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any evidentiary support." Rocha v. State of Rhode Island Public UtilitiesCommission, 694 A.2d 722, 726 (R.I. 1997) (citing Sartor v. CoastalResources Management Council, 542 A.2d 1077, 1083 (R.I. 1988)); §42-35-15(g). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of InterestsComm'n, 509 A.2d 453, 458 (R.I. 1986).
 Towing the Tariff Line
The legislature has given the Division broad regulatory authority over the motor carrier industry. G.L. 1956 § 39-12-4. Furthermore, the Division is charged with administering the Towing Storage Act ("Act"), G.L. 1956 § 39-12.1-15, which deals with non-consensual or police instigated tows. Since the process of selecting towing-storage operators "for police work is unique in that law enforcement, though having the legal duty to order the work, has no legal duty to pay costs and charges connected therewith, the same being the duty of the vehicle owner," the purpose of the Act is to assure the owners of non-consensually towed vehicles of due process of law through the implementation of certain procedures and the establishment of set rates for services. § 39-12.1-1.
Towing-storage operators wishing to be considered for police directed tows must obtain a certificate of public convenience and necessity. G.L. 1956 § 39-12-6, 7. Section 39-12-11 requires these certified common carriers to file with the administrator of the Division "tariffs showing all the rates and charges for transportation, and all services in connection therewith. . . ." Section 39-12-4(d) states:
 The copies of schedules and classifications and tariffs of rates and charges, and all agreements and arrangements between common carriers filed with the administrator as provided in this chapter, . . . and shall be received as prima facie evidence of what they purport to be for the purpose of investigation by the administrator and in all judicial proceedings. . . .
Once their tariffs are published and filed, common carriers may only charge for those services covered by the tariff and at those rates established in the tariff. § 39-12-12. The administrator of the Division may seek criminal penalties or impose civil sanctions (up to $1,000 per violation) for those common carriers that willfully violate the Chapter. G.L. 1956 § 39-12-36.
Here, the Hearing Officer determined that the applicable tariff between the appellant and the Division was the 1998 tariff ("1998 Agreement"), which does not provide for the assessment of charges other than the base tow rate ($63.00), any applicable after hours release rate, a daily storage rate ($24.00), any applicable after hours release rate, and any applicable recovery rate ($90.00).
The appellant argues that the 1998 Agreement does not define the term "tow" and refers instead to the definition of the term in its 2000 tariff ("2000 Agreement"). This definition of "tow" categorizes it as recovering a vehicle from paved road using normal towing procedures. The appellant argues that since the 1988 Jaguar XJ6 was full of water, it was in fact heavier than its dry GVW of less than 8,000 pounds, which would place the tow outside of the 1998 Agreement. At the administrative hearing, in an attempt to explain the imposition of the billed charges, the appellant stated that because the 1988 Jaguar XJ6 was submerged in — and thus full of — water, it had to use a heavy — duty truck to recover it; therefore, it applied its 2000 Agreement and billed for the use of the heavy-duty truck.
As the Division stated in its Order, however, the appellant's 2000 Agreement applies only to commercial vehicles, whereas the Act applies to personal vehicles. Also, the 2000 Agreement applies only to trucks, not to automobiles. Furthermore, contained in the 2000 Agreement is a contingency for removing "trucks" from water and it states that "the price will be by the hour for the particular weight group, no standing time will be allowed for tides, current and wind change," thereby clearly indicating that the appellant would only consider the dry GVW for the truck in determining the price of the tow. See Order at 3. Thus, as the Division held in its Order, the appellant's argument that applying the 2000 Agreement to the present case justifies charging extra for using a heavy-duty truck to pull the automobile from the water does not withstand scrutiny.
Fundamentally, however, the major flaw with the appellant's argument is that, in the present case, the only tariff that determines for what services the appellant could charge and at what rates is the 1998 Agreement, not 2000 Agreement. Of importance here is not the definition of "tow," as the appellant suggests, but rather the plain fact that the 1998 Agreement does not contemplate extra charges for the use of heavy-duty tow trucks nor does it permit the appellant to impose a charge for the replacement of a towing cable. As the Division noted, if the appellant believes that it needs contingencies in its tariff to protect it in such cases as this, the appellant has the affirmative duty to seek amendments to its tariff. The 1998 Agreement was an agreement that the appellant knowingly and willfully entered into and it agreed to be bound by its terms and the terms of Chapter 39. Since Chapter 39 does not permit a common carrier to charge for services not described in its filed, published tariff, the appellant's imposition of excess charges in the present case was clearly contrary to the Chapter.
 Conclusion
After reviewing the entire record, the Court affirms the Order of the Division compelling the appellant to reimburse Geico $1,345.50 for overcharges and fining it $1,000.00 for charging Geico an amount well in excess of its allowable tariff rate. The Court finds that the Order of the Division is supported by the reliable, probative, and substantial evidence of record. Furthermore, the Court also finds that the Division's Order did not constitute an abuse of discretion, was not affected by error of law, is not arbitrary or capricious, and is not in violation of constitutional or statutory provisions. The Court therefore dismisses the appellant's appeal and affirms the Order of the Division. Counsel is directed to confer and submit to this Court the appropriate order for entry after notice.
[1] In its brief, the Division states that it erroneously allowed the recovery amount of $90.00. The Division explained that it allowed the $60.00 per hour recovery charge, which is applied in fifteen-minute increments, only applies to certified towers that have specifically requested it. Here, the Division states that the appellant failed under its obligations pursuant to G.L. 1956 § 39-12-12 to request to either buy into the pre-approved $60.00 recovery charge rate or to seek modification of its Agreement with the Division. See Appellee's Appendix G, Report and Order, Docket No. 00 MC 83. Thus, the Division states that it will correct this error under its own motion pursuant to its own procedural rules or, if this Court remands this case, it will correct the Order at that time.